Our first case in the morning is people in the state of Illinois versus Dennis Davis for the appellant Mr. Wilson for the athlete Shepherd you may proceed May it please the court Good morning, your honors. I represent Dennis Davis on behalf of the office of the state appellate defender Dennis Davis was driving his Jeep down El Dorado Street in Decatur on September 3rd 2011 at 1143 p.m. He was stopped by a police officer for only having one functioning headlight And when the officer realized that Dennis didn't have a valid license Dennis was arrested at the time the officers Dashcam recorded their entire interaction and the dashcam video shows that when Dennis stepped out of his Jeep He had a red or orange plaid shirt on and blue jeans He doesn't seem nervous in the video panicked or full of anxiety In fact, he and the officer had a very pleasant conversation talking about their families The officer even mentioned some of some details regarding his children He felt comfortable with Dennis and the officer performed an inventory search of Dennis's Jeep. They didn't find anything of note This is relevant because 13 minutes before Dennis's Jeep is first shown on the video at 1143 p.m The state alleges that Dennis was many blocks away at Joel shoulders house With one other man wearing all black clothing firing dozens of shots killing one person and Injuring three others. Wasn't that just five minutes away though? Joel shoulders house was five minutes away from where the traffic stop was performed However, Dennis was heading west in the general direction of Joel shoulders house Additionally, we don't know where he had been prior to that time He was driving down El Dorado Street as I said on the video at 1143. You can see his headlights coming towards us We don't know if he was 10 miles further down that road, which is possible while the officer testified that it was That it was five minutes away, there's also a map in the record That I kept a copy of I don't know how clear the court can see this I can certainly bring it to the bench that would be helpful. I put these red arrows on here This is where Joel shoulders house is. This is where Dennis Davis was stopped. So there is a considerable distance between the two points you know the important thing to remember about your point was And he's moving back in the general direction of a little short so he'd have to take up a right Correct to get there, correct. So thinking about practically thinking about the state's argument in order for their argument that Dennis was present at the scene of the shooting to be accurate and consistent with the video a Unimaginable set of circumstances would have to occur Then this would have had to walk up to Joel shoulders house at 1130 with one other man and begin firing I don't remember specifically how many rounds it was, but it was 40 50 60 bullets that were fired that night Then he would have had to run to his jeep Which no one testified seeing at the scene of the shooting take off his dark clothing Take all that they all ran in the house though. They wouldn't have been in a position to see Importantly, well, and I'm not saying that they would I'm just saying in order for the state's hearing be consistent with the traffic stop video In order for Dennis to be seen on the video 13 minutes later The the factors that would have had to happen is Shooting is completed. He runs to his jeep takes off this black clothing He's allegedly wearing takes off the mask that some of the witnesses to the to the crime report see Disposes of that somewhere in order for the police to not find it in the record It doesn't demonstrate that those items were ever found then he has to jump in his jeep Drive away from Joel shoulders residence turn around at some point drive back towards Joel Shoulders residence if he stopped by the police officer all in 13 minutes and the traffic stop was five minutes away Those are a almost inconceivable amount of things that have to happen here. I presume those arguments were made to the jury Yes, well that specific argument regarding the timing I'm not sure was specifically made the jury had all that information in front of it that that is correct And we are asking This court to review this case really for two very important reasons First even though that evidence in its individual parts again It may not have been explained to the jury like that, but even though that evidence was in front of the jury both Defense and even the state in its brief note that Evidence isn't sufficient to satisfy the burden regarding reasonable doubt Where the record compels the conclusion that no reasonable person could accept it beyond a reasonable doubt There's also the Smith case that I cite to in the brief that has very similar facts to the incident case Where the court reversed the defendants conviction and essentially what the argument is here in order to rebut the videotape evidence Showing that the defendant was in a plait shirt 13 minutes later calm cool and collected the state essentially called three witnesses None of whom successfully rebut the videotape evidence because none of them are credible They're absolutely in fact not credible by the time of trial DeMario Cunningham was one of the state's witnesses. I Sincerely don't believe that DeMario was even there in the house at the time DeMario testified that he was hiding out at Joel shoulders residence because he was wanted for the murder of Marvin Dickerson He was hiding from the police and from people that he thought wished to do him harm And he said he was in the living room looking out the window and saw the shooting happen he said this 14 months later after the shooting after he had already been charged with murder and There are important things that DeMario leaves out DeMario merely says that he was standing at a picture window looking out and saw the shooting take place He doesn't mention the thick black or navy drapes that are covering that window He didn't know about those drapes because he wasn't there. He says that well nobody Saw me in the house because I crawled out of the back exit Well, he also testified that he was in the house a minute after the shooting stopped When the shooting began the people from the porch began running into Joel shoulders house they ran through the living room where DeMario said that he was and Into other parts of the house had he been there they would have seen Finally DeMario gets another very important fact wrong. There were two girls on the porch that day DeMario testified Well, no, they wouldn't know that I was there because they never came in the house The girls in fact did come into the house They not only walk through the living room that DeMario where DeMario said he was at the time of the shooting But they walked far enough into Joel shoulders residence that they were able to Meet with him in his bedroom and talk to him DeMario DeMario's testimony doesn't add anything to the state's case because it is It lacks any credibility at all. DeMario was not there The second piece of evidence the state relies upon is Johnny Taylor's testimony Johnny Taylor was one of the people who was shot During the shooting and almost immediately following the shooting while he was receiving medical treatment He gave police a description of the person who shot him. His description was tall Thin dark complected male with no facial hair He said I wasn't able to see the facial characteristics of this person because it was so dark outside And I was focused on the gun that was firing at me Johnny, however was treated at the hospital and he wasn't released he was arrested for another offense and a police officer came and brought him a photo lineup and Incidentally, even though Johnny had said the person I saw that night was clean-shaven Almost all the people in that photo lineup, including Dennis Davis had facial hair Johnny identified Dennis Davis in that photo lineup, but you may be saying well, why did he do that? Well, Johnny explained that at trial. He said that somehow The officer who showed him the photo lineup indicated who the person was that they had in custody at the time Johnny said I was frustrated In fact, I have a quote right here Johnny testified I'm telling you I'm telling you today that out of anger and spite because they said they had him I was angry and I assumed that was him But I'm not a hundred percent sure that that's the man because I couldn't see his face And if there's any wrong done, I'm ready to pay for what I did, but I didn't see the man. It's just like that He made a similar comment earlier that in fact the person who he identified Dennis Davis was not the man that was shooting at him Again The the startling thing to me about the identification is Johnny Taylor says the man who was shooting at me was clean-shaven Then he identifies Dennis Davis's picture and that picture was the picture taken when he was arrested for not having a valid license on the night of the traffic stop So it depicted what he looked like on the night of the shooting and he had facial hair So Johnny Taylor has recanted his identification of Dennis and explained Quite persuasively why that identification shouldn't be relied upon to sustain the state's burden in this case The third witness Colton Green had even less credibility than Johnny Taylor did Colton Green Told police 22 days after the shooting of a friend of his he didn't talk to police until 22 days. He had been He was in some sort of trouble the statement said so he was talking to the police I don't know if he was under arrest for another offense or not But he somehow implicated Dennis Davis in this offense. The record isn't completely clear what he told the police We do know that he told the police that he was in a van at a friend's house with Roderick Dickerson Randy Huber Dennis Davis and His friend and overheard a conversation amongst the men he also knew that there were two guns in the car He knew that there were two guns in the car not because he'd seen Dennis Davis with those guns He'd seen those guns in the possession of Roderick and of Randy prior to the shooting He overheard this these men talking about something involving the death of Marvin Dickerson, and then he got out of the van He has no idea what happened at that point He doesn't know if Dennis Davis got out of the van right after him and that is if you believe Colton's testimony, and I say that because at trial Dennis presented the testimony of Vicki Reacher He testified that at the time that Dennis was allegedly in this van in the friend's house according to Colton He was actually on his way from Macomb to the cave so he couldn't have been in the van Colton then Testifies that the day after the shooting he's at Girlfriend's house while the three men are watching news broadcasts regarding the shooting again Vicki Reacher testified that Dennis Davis was back in Macomb on that day And so she could he couldn't have been at Robert Dickerson's girls girlfriend's house as well so there are Huge problems with this case not not to mention the least of which is Colton Himself recanted the initial statement that he gave to police He wrote a statement saying that his initial allegations against Dennis Davis Were wrong and that he was had just told the police that because he was in trouble and he'd never been in a situation like That he was trying to help himself out Then he gets to trial and he says oh no I take all that back I was under pressure to write this statement from Randy Bowman. Well the interesting thing about that statement is Colton implicated Randy Bowman in this offense just as much as he implicated Robert Dickerson and Dennis Davis had he been under pressure from From Rodney or Randy to Write this statement you would have thought the statement would have said hey and what I said about Randy I take that back too, but it didn't say that He recanted that statement His initial statement to police then he recanted his recantation at trial So his testimony likewise has absolutely no credibility here Especially and I keep coming back to this video this videotape that shows a calm cool and collected Dennis Davis Wearing a plaid shirt with no evidence of a shooting in his jeep 13 minutes after the shooting allegedly occurred Those three witnesses aren't sufficient to undermine the evidence in that video and the video alone Demonstrates that there's a reasonable doubt as to his guilt here, but even if This court says you know what we find that the witnesses were credit There's an additional problem with the state's case and that's issue two in the brief regarding the ineffective assistance of counsel argument Because yes the jury did hear this evidence in the case But they also heard everything in the case including the evidence that shouldn't have come in Colton knows before you move on to their next line of argument You didn't mention that the Muriel Exhumate two identifications in two separate photo lineups credit is correct. That is correct the Muriel The Muriel and his family had a feud with the Dickerson's of which Dennis was one of them The Muriel testified that he'd never seen Dennis before again I question the credibility of that given the familial, you know Relationship with the family and their familiarity with each other. But yes, he did make an identification of Roderick as well So the the jury also heard testimony that it should have never heard specifically Colton Testified when he was asked What his knowledge of Dennis was and how often he's seen Dennis he said well I've seen him occasionally over the 15 years while he's not in jail Defense counsel didn't object to that statement Now a defendant when he walks into court is entitled to have the jury view him as though he is any other citizen He is on par with anyone, but then when we start introducing evidence regarding a defendant's criminal history Especially if that evidence isn't necessary and there isn't a relevant Reason for the admission of that evidence That is reversible error in and of itself, but defense counsel doesn't even object here so the jury walks in they start hearing the evidence of how Dennis was involved in this offense according to the state and That is tainted by this evidence that this gentleman who? Was in his 30s at the time of the shooting had been in and out of jail for the last 15 years All of a sudden that takes the jury's perception of Dennis as Any common law-abiding citizen and that's out the window at that point The jury is viewing him as someone who has a criminal history and that starts moving them closer to the area where they can start Realizing hey This is someone who may very well have been involved in this shooting someone who may very well have been involved in another criminal Enterprise because he's a criminal he's been in jail before I Including a couple from this very court In people versus Allen this court said that a witness testimony about other crimes is generally reversible error And I would argue that it is in this case defense counsel should have objected Even well one I think that the prejudice with drawing more attention to it is far outweighed by the jury learning about it if We work under the assumption that if a jury is given a corrective instruction that that somehow Fixes the problem, which I highly doubt that it does as I've argued another part of this brief That could minimize potentially some of the prejudice But more importantly it are the things that defense counsel could have done Defense counsel could have called a sidebar and said judge This is improper this shouldn't have been said and the judge could have instructed the jury to disregard it It could have been something that essentially was outside of the not Fully, but something that was technically outside the jury's presence for defense counsel was explaining the prejudice that was being Foisted upon Dennis by this comment, so there are ways around Drawing the jury's attention to it But I would certainly argue that even if the fence counsel had objected to it and that drew the jury's attention to it the prejudice From that happening is far less than allowing the jury to Wonder off mentally into what these other offenses could have been that Dennis was engaged in maybe he's done this before Maybe he battered people Maybe he's been in jail for robbery with a handgun it allowed the jury to go to a place that it shouldn't have been allowed to go in a similar case the people versus bunny case decided in the brief this court with this situation where a Police officer was being questioned and he mentioned that he had interrogated the defendant the defendant ended the interrogation Attorney and this court found that defense counsel's failure to object in that circumstance was clearly ineffective assistance of counsel Now it reversed on more of a cumulative sort of error analysis But this court has found that an error very very similar to the one here an error where a matter that was completely Inmissible comes up almost in passing during a witness's testimony is in and of itself Constitutes ineffective assistance of counsel and the error here is no less prejudicial Colton also testified that The Cunninghams wanted revenge that any Cunningham was supposed to be a target That he was just good that they were going to take care of something That they were going to take care of business and again no objection from defense counsel Those statements weren't attributed to Dennis were hearsay I can probably think of half a dozen reasons that that that testimony should have been excluded, but defense counsel didn't object to Interestingly the state doesn't address the merits of those arguments in its brief. It solely says this isn't an issue that we shouldn't litigate now But it is I cannot think of a single relevant trial strategy reason for defense counsel To be okay with the jury knowing his client has a criminal history or to know that his client has been in and out of jail for 15 years That is evidence that the jury barring some Requirement that it's necessary to prove an element of the state's case The jury does not need to know about and they were told that information in this case. So this case is not just a A full reasonable doubt sort of argument certainly, I think especially in light of the videotape that demonstrates that Either Dennis was involved with this and is a better actor than I have ever seen or he absolutely wasn't and I think it is much the latter But not only is there insufficient evidence to justify the state's burden in this case but also there's a compelling ineffective assistance of counsel argument an Where defense counsel act actually act Appropriately and effectively will give Dennis good representation and not allow statements like Colton Greene's to come in where he testifies that Dennis has been in and out of jail for that time an attorney who will if it wasn't done in the initial trial will delve into that video and will Show the jury how that video is completely inconsistent with the state's theory in this case So for those reasons, I would ask that these convictions be reversed outright reversed remaining for any trial, thank you As To the ineffective assistance claims, of course We argued in our brief that the case should be agreed that the case should be remanded for a prank or hearing that inquiry Remand would address both problems of Strickland including prejudice and that would be So therefore would be premature for this court to address Ineffective assistance claims on direct appeal. It's going to go back to the crank over Also under this court's precedent including Beach And Coons We don't look at Ineffective assistance claims on direct appeal if the record is insufficient to evaluate them and as your honor pointed out It could have been a matter of strategy as to some of these Asserted instances of ineffective assistance that defense counsel didn't object didn't want to draw attention to certain things These are all things that should not be addressed on direct appeal as the main issue reasonable doubts So many issues As far as the traffic stop, this was all well everything that defendant argues was before the jury whether or not the witnesses were credible that's clearly something for the jury to decide and we have to remember that they not only heard the testimony of the eyewitnesses, but also the officers who showed them the photo arrays and explain the circumstances of for example Taylor's Initially identified defendant and then he was given another photo array and he said that not that He did not identify anyone in the second photo array But said there were a couple people who look similar and then he explained later in his handwritten statement on being shown a photo array and Identifying defendant again the next day that he thought that the fact that they showed him a second photo array meant that he had somehow made a mistake in making his initial identification, so all of this was explained the jury was Well equipped to determine whether or not they wanted to believe the witnesses and clearly they did believe the state's witnesses and The question of course before your honors is not whether or not there are other reasonable inferences that Might support defendant but rather whether or not the inferences that the jury drew in favor of the state were reasonable and Cunningham makes it very clear explains how we evaluate all that and The jury's inferences were reasonable there's no basis for finding that they weren't and there may be questions based on Certain anomalies or flaws in the testimony That was all before the jury As to some of defendants arguments as to Well I I went through in my initial brief point by point Addressing certain things that defendant argued and how they were missed not necessarily supported by the record I want to address some of those things that counsel Now that we're in the reply brief as well There was of course evidence that Cunningham was in shoulders house he testified he was there And there was a good reason why people didn't see him why the other witnesses He testified did not say that he was there that did not testify that they saw him there and that was because he wasn't hiding For Marvin's murder in fact. That's what the evidence shows this fence was committed to a bench He remained in hiding afterward So you can tell police about the incident of fence until he's taken into custody All of that was before the jury was very reasonable for them to conclude that that's why See him in the house also after the shooting. Oh and Cunningham Didn't testify Stewart and Wheeler never went into shoulders house Or that he knew the locations of various people who came to the house instead He testified that while he was in the living room room He heard females arrived that did not see or have contact with them or recognize their voices Again, very credible because he was trying to hide out not be seen by other people The others wouldn't have seen Cunningham in the living room after the shooting Because he testified he crawled to the kitchen. It's in the kitchen where he testified after the shooting stopped he stayed in there for a minute and then left out the back the kitchen was in the back of the house so that There's not a conflict as to well Ran into the house and confusion after the shooting they would have seen him. He said that he was he had crawled to the kitchen What do you say to counsel's arguments that there were curtains in the Where he was and so therefore he could not have seen outside this and have seen the shooter The jury could very reasonably infer that he spread the curtains aside and and looked out the window It's 1134 at night when the well sometime before 1134 at night when the shooting happened 1134 was when the Dispatch came or the police arrived that the police officer testified as to Both things as to that time, but you know it was dark out. He's in hiding. They're dark curtains He's not going to turn on a light or open the curtains wide to look out the window And it was dark enough where he wouldn't be seen if in fact the lights were off He was looking out that Would he see the shooter there? He sees the shooter because he's looking out the picture window. He testified I'm looking out this picture window that overlooks the front yard, and I saw the two shooters come from either side of the house So he saw them even before they began shooting he had an even better Opportunity to see what was going on because he said he's looking out at the front yard when this occurred So Also as to opportunity of you Clearly Taylor gave a description Shortly after the offense to four different officers talking about the description of the shooter who shot him who he saw He of course made two identifications in the photo arrays and then wrote that the statement confirming the Identification Cunningham also identified that and of course You know there wasn't testimony about lighting or about whether or not the moon was out Or there was no testimony from which the jury would find that there wasn't enough opportunity to see the shooters and the jury clearly found that there was and The record is sufficient to support that Also, we have to remember that aside from the identifications Other evidence shows that defendant was connected to the offense Green's testimony about how two and a half to three and a half hours before the shooting he met with His great nephew Randy Hubbard and his cousin Roger Dickerson, which the evidence showed Dickerson was the other shooter Or indicated that he was they discussed avenging that night the recent murder of their cousin Marvin Dickerson and Mariel Cunningham was the person who was wanted for that murder and in fact was later charged with that murder so They all believed defendant Roderick and Hubbard believed Marvin had been murdered by Demariel and The shooting happened to take place at the house where Cunningham was hiding out The guns present during that discussion before the shooting were a nine millimeter and a 40 caliber Which were the same size guns forensic evidence showed were used in the shooting Defendant was in the vicinity after the shooting and of course The timing it looks like it was more like 15 minutes. Well, there's 13 minutes or 15 minutes after the shooting is It was as your honor Mentioned it's only five minutes away. So there was time for him for defendant to dispose of the gun and Change his clothes take off. Maybe he had black clothing over the clothes. He was wearing And in the discussion afterwards Which also connects defendant to the shooting? There was discussion about Dickerson getting rid of his gun. Now there were at least two guns used in the offense. They didn't talk about the defendant getting rid of his gun Apparently he disposed of it before he was found before he stopped in the traffic stop And also in that discussion after the offense They talked about the need to get out of Dodge. They talked about the shooting So the jury could reasonably infer from the evidence the defendant had a motive for committing the offense avenging the death of Marvin his cousin They could reasonably infer he planned the offense with Hubbard and the other shooter Robert Roberts Dickerson They could reasonably infer that the same guns that were present while they planned the offense Were used to commit the shooting at the very house where Cunningham they thought had murdered Marvin was wanted Was was hiding out So that evidence connecting defendant to the fence provided further support for his identification by the two eyewitnesses And of course the reason or the fact that Taylor recanted his identification at trial. It's well subtle that Recantation statements are highly suspect and unreliable the jury didn't have to accept that testimony Especially in light of the fact that he did Taylor had Identified that multiple times before the statement confirming the identification And It's for the same reason the jury could Reasonably credit Green's testimony and reject his earlier recantation Which by the way? greens Green did talk to the police and and then later on when he was he was in hiding From Defendant and the others who's being pressured to recant as he described in his testimony There's no basis for rejecting the jury's apparent acceptance of that testimony He testified about that in detail and he also before trial had told the police in December of got in my brief December Of 2013 November late November early December 2013 about being coerced to write the state so And also about whether or not he implicated Hubbard from my reading of My description in my brief of the record as to the pages that put counsel sites for saying that he had originally implicated Hubbard It looks like he's citing to Green's trial testimony just describing that conversation Not any not what he told police, but so that would not be inconsistent with this With what he was saying later So also a couple of points, I'd just like to address in our brief There's a typo on page 18 I Said that Detective Patton testified the penitent had no facial hair in the photo exhibit number 24 that Taylor identified That's a typographical error. I guess the court to disregard it Then it clearly does have facial hair in the photo and Detective Patton described the photos showing facial hair Also in my brief I cited to your honors decision in this serve Which of course there's a recent decision in this serve that was issued after Remand from the Supreme Court the substance of mister that we rely on in our brief is the same that the paragraph numbering is different If you would like us to file Substitute brief with the correct numbering So basically It's it's a difficult case, but that's where the jury comes in handy the jury Considered all of these issues, and there's nothing Also talks about credibility About what is more plausible what rings of truth it was for the jury to decide all those issues and The evidence was not such the record was not such that no reason No questions, thank you Rebel The State Says we don't know or that the jury obviously accepted the testimony that was offered in this case. We don't know that We don't know what the jury thought was credible and what they did It's very possible that they thought the Muriel Cunningham's testimony wasn't credible that they thought Colton Greene's testimony was incredible That maybe they relied upon Colton's Comment that the defendant had been in a prison for 15 years in order to reach the decision that they did in this case this is a hard case because there's there's a evidence the video which again is what I keep coming back to a Unbiased objective view of that video somebody looking at that video seeing Dennis Davis not in clothing that the shooters were wearing not panicked not having any evidence of the shooting in his car is Overwhelming evidence that he more than likely Was involved and the state better have very good evidence showing that he was in order to repel what was in that video They simply don't one thing I think is very important to point out about the video in the circumstances that happened here This is not a case Where Dennis committed the shooting was wearing black clothing over his plaid shirt? Took that clothes took the black clothing off and it went to a Walmart for instance where he knows their security cameras around so he could Manufacture an alibi for himself and say oh no I could have done it because the video of Walmart shows that I wasn't wearing black clothing He has no idea that this officer is going to pull him over. He doesn't know that he can't have a black sweatshirt or Black clothing in his car. He doesn't know the officer's going to pull him over and potentially find that or a gun He has none of that knowledge, but yet when the officer pulls him over not only is he in this plaid shirt Not only is he calm cool and collected, but there is no evidence whatsoever in this jeep That he's committed this offense As to the specific credibility issues with the witnesses the state says well, you know the Muriel I think justice review asked her justice connect about the the curtains over the window It's interesting the mural doesn't mention the curtains in his testimony The Muriel talks about how he looked out the front window how he had a full view of everything That was occurring in the yard how he saw the flashes from the gun He gives fairly detailed testimony about what he allegedly saw that night. He doesn't say anything about parting the curtains Question but I Do not remember if he's asked that or not. I I don't I honestly do not remember that And While the state says and I'm pivoting now to the ineffective assistance of counsel argument Well, the state says this is something that can be sent back to me and can be decided during the Krenkel inquiry my issue with that remedy is What? relevant evidence is Counsel going to say at that hearing that justifies the ineffectiveness that he demonstrated during the trial What possible rational reason can he come up with To say no, it was it was proper that Colton testified that the defendant in and out of prison for 15 years. Well, yeah And in our jail for 15 years, correct What possible rational reason is there for him not to move to strike Colton's testimony? That the defendant needed to get out of town because he just killed somebody What if defense counsel Says that the Krenkel hearing I Didn't want to call greater attention to that Trial judge didn't like sidebars and I'd already decided that a jury was thinking all these guys were a bunch of mopes and Maybe he was in and out of jail for possession of a small amount of marijuana. Maybe he was in and out of jail for public intoxication How do you go beyond that if that is what counsel said? The the problem with that is we don't know what the jury was thinking the jury no, we're never gonna know Well, yeah, that's that's absolutely correct. And that's why there needs to be the reversal here because The jury may well have been thinking he was in for a handgun offense. Let's go back to the video Yes, would I be crazy as a juror to think that somebody who's planning a revenge shooting? might Decide to put on black jeans and a black sweatshirt and Do the shooting and then Get into my grunge plaid shirt and pants Immediately thereafter which I have in my Jeep. I It's unreasonable Because of the timing because of the timing and because he doesn't know that he's going to be stopped by the police officer that this would be a different look but if you look at it as if This is a person that could have possibly done it. He knows they're going to be witnesses And if you know, they're going to be witnesses Even if you're gonna go to a bar Maybe you change your clothes I I'm not following Look look. Well, the witnesses are going to tell the police that a couple of guys in black Like assassins came around the father Doesn't seem unreasonable to me that I would change clothes So that later when somebody the police come into the bar that where mopes go They see a guy sitting there in a plaid shirt and a pair of jeans Drinking his beer He's not anybody. They're gonna pay this and I see my time's expired. I think it's fun The the issue again, though is he doesn't know that 13 if he's involved in the shooting. He doesn't know 13 minutes later Or he's seen 13 minutes later on the video. He stopped 17 minutes later He doesn't know he's gonna be stopped if he's thinking I'm gonna go into the bar later Well, he knows. Oh, I should change somebody may recognize me. The police may come in here looking for me so I'm going to change out of my clothes and Trying to get rid of any evidence. I've been involved in the shooting the Contemplation that you're giving in the hypothetical There's no evidence that that was present here where 13 minutes after the shooting He's found driving back in the general direction of the shooting The state doesn't in their argument didn't mention the the alibi testimony that was given by Vicki reacher Doesn't test doesn't fully develop a lot of the ineffective assistance of counsel arguments that we've been demonstrating That indeed this be a reasonable person looking at this video Thinking about as your honor does is not going to think he knew he was going to be pulled over by the police and therefore He didn't change out of his clothes It was something that was completely unexpected and therefore I would say a reasonable person viewing the video Would not find that the state's theory about this has any weight Thank you, thank you take the matter under advice We play this next piece